**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

JAMES SCOTT HARRINGTON,

and

JOSHUA A. KELLERMAN

                              Plaintiffs,

v.                                                    Case No. 5:20-cv-4081-HLT-KGG

STATE OF KANSAS,

and

HERMAN JONES, *in his individual capacity*,

and

JASON DE VORE, *in his individual capacity*,

                              Defendants.

---

### MEMORANDUM AND ORDER ON MOTION TO COMPEL DISCOVERY AGAINST DEFENDANTS STATE OF KANSAS, HERMAN JONES, AND JASON DE VORE

Now before the Court is Plaintiffs' "Motion to Compel Discovery against Defendants State of Kansas, Herman Jones, and Jason DeVore." (Doc. 34). Plaintiffs seek to compel responses to various interrogatories and requests for production ("RFPs"). Defendants oppose the motion asserting that their responses to date are adequate or protected by privilege. (Doc. 37). Having reviewed the submissions of the parties, the Court **GRANTS IN PART and DENIES IN PART** the motion before the court.

1

I. **Background**

Plaintiffs, James Scott Harrington and Joshua A. Kellerman, bring claims against their former employer alleging violations of Title VII of the Civil Rights Act of 1964 and violations of their First Amendment rights. (*See generally* Doc. 1). The complaint was recently amended to include due process violations of the Fourteenth Amendment under 42 U.S.C. § 1983. (Doc. 43). Both Plaintiffs were employed by the Kansas Highway Patrol ("KHP") and were subsequently terminated from employment. (Doc. 34, at 1). The current dispute between the parties pertains to several interrogatories and discovery requests which, in large part, seek information from 2019 to 2020. The Court will provide some details of the KHP's history to understand the basis of the current dispute.

Mark Bruce was the Superintendent of the Kansas Highway Patrol ("KHP") until he resigned and retired in March 2019. (Doc. 37-2). At which point, Herman Jones was appointed to be his successor. (*Id.*). Several months later in January of 2020, Mr. Bruce sought a writ of mandamus to compel his return to the rank of Major with permanent status in the classified service of the KHP. *Bruce v. Kelly*, No. 20-4077-DDC-GEB, 2021 WL 4284534, at *1–2 (D. Kan. Sept. 21, 2021) (discussing factual background of Mr. Bruce's case). Thereafter, Colonel Jones was being investigated by the Department of Administration for violating workplace conduct rules. (Doc. 37-2). The Department of Administration issued a summary of findings which found that no violations took place. (*Id.*). It further found that there was an effort to oust Colonel Jones and other members in

2

KHP leadership and noted there was a continued network of support for Superintendent Bruce. (*Id.*). On May 27, 2020, the Kansas Supreme Court denied Mr. Bruce's writ of mandamus. Order, *Bruce v. Kelly*, No. 122,370 (Kan. May 26, 2020). Further, the Office of Governor Laura Kelly retained the law firm of Fisher, Patterson, Sayler & Smith to review and investigate complaints involving the administration and operations of the KHP. (Doc. 37-2).

Plaintiffs seek, *inter alia*, information pertaining to the independent investigation into the KHP, documents related to Plaintiffs' employment, and various communications sent and received by KHP leadership. They served their First set of Interrogatories and First RFPs to Defendants on May 14, 2021 (Doc. 34-1, at 1). Defendants served their responses and objections to the discovery requests on July 16, 2021 (*Id.*, at 2). The parties spent the subsequent months attempting to resolve the disputes with the discovery requests and objections. The parties were able to resolve many of the disputes through good faith discussions. Plaintiffs ultimately decided to bring those issues they could not resolve before the Court. On September 9, 2021, Plaintiffs moved to compel responses to their interrogatories and RFPs.

## II.    Legal Standard

Rule 26(b) of the Federal Rules of Civil Procedure govern the scope of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b).

As such, for the information to be discoverable, the requested information must be nonprivileged, relevant, and proportional to the needs of the case. *Holick v. Burkhart*, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018). A party may file a motion to compel when the responding party fails to permit discovery. *Sperry v. Corizon Health*, No. 18-3119-EFM-ADM, 2020 WL 5642343, at *3 (D. Kan. Sept. 22, 2020). The initial burden rests with the party seeking discovery, but the moving party need not address all proportionality considerations. *Id.* Once the initial burden has been established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request. *See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004). "The objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Carter v. Union Pac. R.R.*, No. 20-2093-DDC-KGG, 2021 WL 1250958, at *2 (D. Kan. Apr. 5, 2021) (Gale, J.) (citing *Sonnino v. Univ. of Kansas Hosp. Auth.*, 221 F.R.D. 661, 670–71 (D. Kan. 2004)).

### a.  Overbreadth Standard

A party may object to a discovery request on the basis that it is overbroad and fails to identify the documents sought with reasonable particularity. *See, e.g.*, *Ehrlich v. Union Pacific R.R. Co.*, 302 F.R.D. 620, 624–25 (D. Kan. 2014). Courts in this District have held that a discovery request may be facially overly broad if it uses an 'omnibus term'

such as 'relating to,' 'pertaining to,' or 'concerning.' *Johnson v. Kraft Foods North America, Inc.*, 238 F.R.D. 648, 658 (D. Kan. 2006) (citing *Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005)). "That rule, however, applies only when the omnibus term is used with respect to a general category or broad range of documents." *Id. See also Sonnino*, 221 F.R.D. at 667; *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 538 (D. Kan. 2003).

Courts want to avoid a situation in which a party upon whom discovery is served needs "either to guess or move through mental gymnastics . . . to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request." *Id.* When, however, the omnibus phrase modifies a sufficiently specific type of information, document, or event, rather than large or general categories of information or documents, the request will not be deemed objectionable on its face. *Id.*

There is some confusion between the concept of an overbroad request and one which is ambiguous or vague. In the latter category, in which the party fails to describe the request with reasonable particularity, the request may be so general that a responding party cannot reasonably determine the meaning or the limits of the request. Some of this confusion is compounded by court opinions which merge this concept with overbreadth.

Into this mix is Magistrate Judge Rushfelt's eloquent opinion in *Hilt v. SCF INC*, 170 F.R.D. 182 (D. Kan. 1997). This opinion is cited in Defendants' objections as

5

declaring overbroad any interrogatory which requires a narrative response. This is not the ruling in *Hilt*. However, the opinion does counsel against court approval of interrogatory requests which are so broad that a responder is unlikely to respond without falling into the trap of leaving out something which would be literally covered by the request. Judge Rushfelt cautioned in *Hilt* that "indiscriminately hurling interrogatories at every conceivable detail and fact which may relate to a case" run afoul of the principals of Fed. R. Civ. P. 1 which requires the "just, speedy and inexpensive determination of every action." 170 F.R.D. at 186–187. The purpose of interrogatories is not to exhaust every detail in a case or to lay a trap for a party whose sworn response may be honest and complete but arguably lacking some "detail."

The offending interrogatories in *Hilt* were an extreme example. The interrogatories requested "each and every fact supporting all the allegations" in the case, and the identification of each "person having knowledge of each fact" and "all documents purporting to support" each claim. *Id.* at 186. The interrogatories earning the Defendants' objections in the present case are not nearly as onerous. However, the objection may hit its mark to some extent.

The Court has examined the use of the term "detail" and the phrase "each and every" in the interrogatories. These terms may, in some instances, properly provoke objections of overbreadth, ambiguity or simple inefficiency under Rule 1.

6

Defendants object that several requests are overbroad because of the use of the phrase "each and every." There are times that the use of this type of language can result in overly broad requests. *See, e.g.*, *Williams v. Sprint/United Mgmt. Co.*, 235 F.R.D. 494, 502 (D. Kan. 2006). However, use of such language does not automatically render an interrogatory overbroad. The language must be considered within the context of the entire interrogatory. If that phrase is qualified by the overall question in a way that limits the request to information within the scope of discovery and avoids ambiguity, the use of the phrase will not invalidate the question.

The use of the word "detail" may also be troubling. When used without definition or limitation, the request may arguably require an open-ended narrative description which places the responder in the unfair position of remembering and describing every word uttered and every action taken during an event, regardless of significance, or run the risk of impeachment at trial. In many of the interrogatories at issue here, when the Plaintiff requested "details," that word was defined. To provide an illustrative example, in Jones Interrogatory number 1, Plaintiffs request "in detail the circumstances regarding . . . Harrington's termination of employment . . . specifically identifying: a. The person in charge of making the decision to terminate Harrington; b. Each and every person who was consulted and/or conferred with as part of the decision to terminate Harrington; c. A detailed list of the exact reason(s) for which Harrington was terminated." The Court interprets the three-phrase list as the definition of "detail" for the purpose of this

7

interrogatory. Absent this interpretation, the request to detail "circumstances" would be improper.

### b.  Attorney-Client Privilege Standard

Federal law provides an attorney-client privilege for communications between an attorney and client. *See Heglet v. City of Hays*, No. 13-2228-KHV-KGG, 2014 WL 1094458, at *2 (D. Kan. Mar. 19, 2014). The party asserting the privilege has the burden of establishing its applicability. *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 426 (D. Kan. 2009). The essential elements of the attorney-client privilege are: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection is waived. *Marten v. Yellow Freight Sys., Inc.*, No. 96–2013–GTV, 1998 WL 13244, *5 (D. Kan. Jan. 6, 1998).

> The privilege 'protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor.' The privilege also protects advice given by the lawyer in the course of representing the client. The privilege protects communications with in-house counsel as well as outside attorneys. The privilege, however, 'is to be extended no more broadly than necessary to effectuate its purpose.'

*New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 425 (D. Kan. 2009) (citations omitted). The importance of the attorney-client privilege in American jurisprudence is well-established. *See Cincinnati Ins. Co. v. M.S. ex rel. Serrano*, No. 11–2075–JAR/KGG, 2011 WL

6304086, at *6 (D. Kan. Dec. 16, 2011) (citing *Milavetz, Gallop & Milavetz, P.A. v. U.S.,* 130 S. Ct. 1324, at n. 5 (2010) (holding that the attorney-client privilege is an important "means of protecting that relationship and fostering robust discussion" between a party and its counsel)). As such, waivers of the privilege are to be narrowly construed. *Id.*

### c. Work Product Doctrine Standard

The work product doctrine is incorporated into Fed. R. Civ. P. 26(b)(3) which, in part, provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared *in anticipation of litigation* or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i)   they are otherwise discoverable under Rule 26(b)(1); and
> (ii)  the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A) (emphasis added). The "in anticipation of litigation" language places a particular focus on the motivating purpose behind creating the documents. *See Disidore v. Mail Contractors of America, Inc.,* 196 F.R.D. 410, 413 (D. Kan. 2000). The documents at issue cannot have been created for a regular business purpose or made within the ordinary course of business. *Raytheon Aircraft Co. v. United States Army Corps of Engineers*, 183 F. Supp. 2d 1280, 1288 (10th Cir. 2001). When the documents were created, the threat of litigation must have been both real and imminent. *See McCoo v. Denny's Inc.,* 192 F.R.D. 675, 683 (D. Kan. 2000).

### III.   Analysis

Plaintiffs move to compel answers to interrogatories and the production of documents in response to RFPs. The Court will first consider the interrogatories at issue. Plaintiffs first make two broad arguments: (1) Defendants have waived their objections and (2) the attorney-client privilege objections were improperly asserted. (Doc. 34, at 4). In support of the first argument, they contend that a response which contains an objection, and then is followed by an answer, should be considered a waived objection. In *Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.*, the court explained that a response which contains both an objection and answer has no basis in the Federal Rules of Civil Procedure. No. 14-1136-JAR, 2015 WL 404977, at *2 (D. Kan. Jan. 29, 2015). This point is valid as a general rule, but some exceptions logically apply.

The purpose for finding waiver is to eliminate the confusion created by both objecting and answering. For example, if the responding party objects that the request is overbroad, or otherwise beyond the scope of the discovery, but then responds, is the party withholding information pursuant to the objection? Is the party conceding that the information provided is not objectionable? If the objection is that the request is vague or otherwise unclear, does the response represent an answer to a question the responder did not understand? These are examples where the objection may be considered waived.

There are some common situations where waiver need not apply. Obviously, a privilege objection, which requires information to support the objection, would not

prevent a responding party from providing non-privileged information in a response. An overbreadth objection may be accompanied by a response which includes a limiting definition. For example, an objection that an interrogatory is overbroad because it not limited in time may be accompanied by an answer offering information within a clearly limited time period. This both provides the requestor with information and preserves the objection. An objection that a request is vague may be answered by an answer accompanied by a re-statement of how the responder understands the question. In these situations, the response after an objection does not create confusion and a finding of waiver is unnecessary. There may be other illustrative examples. Additionally, there are times when the court may, in fairness, still entertain the objection. *Great Plains Ventures*, 2015 WL 404977, at *2.

As to the assertion that the attorney-client privilege objections are improperly asserted, Defendants respond that their objections are compliant with Fed. R. Civ. P. 26(b)(5) which provides[1]:

> ***Claiming Privilege or Protecting Trial-Preparation Materials.***
> **(A)** *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
> > **(i)** expressly make the claim; and
> > **(ii)** describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

---

[1]Defendants in their brief quote an older version of Fed. R. Civ. P. 26(b)(5). However, the changes do not substantively change the analysis of the question before the Court.

Fed. R. Civ. P. 26(b)(5) requires that a party withholding otherwise discoverable information because of a claim of privilege must expressly make the claims and describe the documents or communication in a manner that "will enable other parties to assess the claim." In this District, the parties are generally required to submit a privilege log for the privileged documents which is required to include:

> (1) A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.; (2) The date upon which the document was prepared; (3) The date of the document (if different from # 2); (4) The identity of the person(s) who prepared the document; (5) The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney; (6) The purpose of preparing the document, including an evidentiary showing, based on competent evidence, 'supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;' a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, 'that the documents do not contain or incorporate non-privileged underlying facts;' (7) The number of pages of the document; (8) The party's basis for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and (9) Any other pertinent information necessary to establish the elements of each asserted privilege.

*Leftwich v. City of Pittsburg, Kansas*, No. 16-2112-JWL-GLR, 2017 WL 1338838, at *2 (D. Kan. April 12, 2017) (citing *BridgeBuilder Tax + Legal Servs., P.A. v. Torus Specialty Ins. Co.*, No. 16-2236-JWL-GEB, 2017 WL 914809, at *4 (D. Kan. Mar. 8, 2017) (citations omitted)). "The objecting party must provide enough information in the

privilege log to enable the withholding party, and the Court, to assess each element of the asserted privilege and determine its applicability." *Leftwich*, 2017 WL 1338838, at *2. If a party fails to produce a privilege log or provides an inadequate one, the privilege may be deemed waived. *Sprint Comm'cns Co. L.P. v. Big River Telephone Co., LLC*, No. 08-2046-JWL, 2009 WL 2878446, at *1 (D. Kan. Sept. 2, 2009). However, "courts often reserve such a penalty for those cases where the offending party unjustifiably delayed in responding to the discovery requests or acted in bad faith." *Id.*

In their Interrogatory responses, Defendants described claimed privileged communications. Defendants then supplemented their responses to Requests for Production of Documents with a chart-style privilege log. Both forms are acceptable. However, in the Privilege Log, the Defendants failed to specify which enumerated entries applies to which Request for Production. The Court will review all claims *infra*. However, to avoid confusion, Defendants are **ORDERED** to supplement their responses to specifically correlate to their log.

### a. Jones and De Vore Interrogatory Nos. 6, 7, 8, 9, 11, 12, 13 and State of Kansas Interrogatory Nos. 7, 8 , 9[2]

Plaintiffs assert Interrogatory Nos. 6, 7, 8, 9, 11, 12, and 13 seek information directly related to the elements of their claims. Defendants objected claiming that "[t]his interrogatory seeks the 'detail' of 'each and every' communication" regardless of method

---

[2]The Jones and DeVore Interrogatory Nos. 7, 8, and 9 are similar to State Interrogatory Nos. 7, 8, and 9. As such, the Court will consider these interrogatories in the same section.

and seeks a narrative response and is overbroad." They further objected on the basis that

it was not subject to discovery under the attorney-client privilege. Interrogatory No. 6

provides:

> **Jones and DeVore Interrogatory No. 6**: Describe in detail each and every
> communication, written or verbal, that you participated in, or witnessed,
> with Governor Laura Kelly, or any member of her staff or administration,
> regarding either of the Plaintiffs' terminations; specifying the dates of the
> communication, the method of communication, and identify all
> participants.

> **Jones/DeVore ANSWER**: Objection. This interrogatory, seeks the "detail"
> of "each and every" communication" regardless of method seeks a narrative
> response and is overbroad. *Hilt v. SFC Inc.*, 170 F.R.D. 182, 188 (D. Kan.
> 1997). The interrogatory further seeks to invade attorney-client privilege.

> Major Andrew Dean forwarded an email to me and Lt. Col. DeVore on
> December 5, 2020 from Director of Communications for the Office of the
> Governor Sam Coleman which, in turn, forwarded an email from Kansas
> City Star Reporter Catherine Bernard with the subject line "KC Star – KHP
> Lawsuit." Lt. Col. DeVore forwarded that email to KHP Chief Counsel
> Luther Ganieany and copied me.

> To the best of my recollection:

> June 10, 2020: An in-person meeting occurred. Col. Jones, myself, Chief of
> Staff for the Office of the Governor Will Lawrence (GO), Chief Counsel
> for the Office of the Governor Clay Britton (GO), Dept. of Administration
> Chief Counsel John Yeary, Dept. of Administration Director of Office of
> Personnel Services Kraig Knowlton, and KHP Chief Counsel Luther
> Ganieany. The subject of the attorney-client privileged meeting was to
> discuss performance concerns regarding then-Major Harrington and then-
> Major Kellerman. The details of the communications are privileged.

> July 10, 2020: An in-person meeting occurred. The attendees were Col.
> Jones, myself, Chief of Staff for the Office of the Governor Will Lawrence,
> Chief Counsel for the Office of the Governor Clay Britton, Director of
> Communications for the Office of the Governor Sam Coleman, Dept. of

Administration Chief Counsel John Yeary, Dept. of Administration Director of Office of Personnel Services Kraig Knowlton. The subject of the attorney-client privileged meeting was to discuss performance concerns regarding then Major Harrington and then-Major Kellerman. The details of the communication are privileged. Col. Jones and Lt. Col. DeVore then met with KHP General Counsel Luther Ganieany for the same purpose. The details of the communications are privileged.

On July 16, 2020, an in-person meeting occurred. The attendees were Col. Jones, Lt. Col. DeVore, Chief of Staff for the Office of the Governor Will Lawrence, Chief Counsel for the Office of the Governor Clay Britton, Director of Communications for the Office of the Governor Sam Coleman, Dept. of Administration Chief Counsel John Yeary, Dept. of Administration Director of Office of Personnel Services Kraig Knowlton, and KHP General Counsel Luther Ganieany. The subject of the attorney-client privileged meeting was to discuss performance concerns regarding then-Major Harrington and then Major Kellerman. The details of the communications are privileged.

Defendants first object that the request is overbroad due to the "each and every" language used. (Doc. 37, at 5). As discussed above, there are times when the use of this type of language can result in overly broad requests. *See, e.g.*, *Williams v. Sprint/United Mgmt. Co.*, 235 F.R.D. 494, 502 (D. Kan. 2006). However, the language must be considered within the context of the entire interrogatory. Plaintiffs request all the communications with Governor Kelly or her staff *regarding their termination*. The interrogatory is sufficiently qualified to avoid a finding of overbreadth. It limits the communications to Governor Kelly or her staff and limits it to communications regarding a particular event (*i.e.*, Plaintiffs' termination). The overbreadth objection is **overruled.** As discussed more thoroughly above, the use of the word "detail" may evoke vagueness or ambiguity concerns. However, the latter part of the interrogatory provides insight into

15

what "detail" means. The details need to relate to the Plaintiffs' terminations and needs to specify the dates of the communication, the method of communication, and identify all participants. As such, the word "detail" does not render the interrogatory ambiguous.

Defendants further object that the interrogatory is covered by the attorney-client privilege. (Doc. 34-2, at 4). In their qualified answer to the interrogatory, they identify 3 meetings that took place, and identify several attendees including the Department of Administration's Chief Counsel, John Yeary. Plaintiffs assert that the communications relate to the performance of then-Major Harrington and then-Major Kellerman and claim they are protected by the attorney-client privilege. They argue that the answer is sufficient to assess the applicability of the privilege. The Court disagrees that enough information is given to determine its applicability. Their responses indicate that meetings were regarding Plaintiffs' job performance and took place with counsel but does not state that a subject of the meeting was legal advice. The response is conclusory and insufficient to find the attorney-client privilege is applicable. The objection is **overruled.** Defendants, Jones and DeVore, must respond to interrogatory No. 6.

Interrogatory No. 7 provides:

**Jones/DeVore Interrogatory No. 7**: Describe in detail each and every communication, written or verbal, that you participated in, or witnessed, with Governor Laura Kelly, or any member of her staff or administration, regarding Plaintiff Harrington's request to have his sick leave paid, post-termination; specifying the dates of the communication, the method of communication, and identify all participants

16

**Jones/DeVore ANSWER**: Objection. This interrogatory seeks the "detail" of "each and every" communication" regardless of method and seeks a narrative response and is overbroad. *Hilt v. SFC Inc.*, 170 F.R.D. 182, 188 (D. Kan. 1997). This interrogatory further seeks information not subject to discovery under the attorney-client privilege.

See three emails dated August 13, 2020 by an among KHP Office of Personnel Services Benefits Coordinator Lea Wieshaar, former Human Resources Director Susan Pfannenstiel, and Major Eric Sauer, with copies to Lt. Col. DeVore

September 8, 2020 Email from Col. Jones to KHP General Counsel Luther Ganieany regarding legal advice pertaining to request for payout of sick leave [ATTORNEY-CLIENT PRIVILIGE]

September 9, 2020 Email from KHP General Counsel Luther Ganieany to Col. Jones regarding legal advice pertaining to request for payout of sick leave [ATTORNEY-CLIENT PRIVILIGE]

September 15, 2020 email from Will Lawrence Chief Counsel for the Office of the Governor Clay Britton forwarding the previous email

September 15, 2020 email from Clay Britton to KHP General Counsel Luther Ganieany, soliciting information for purposes of legal advice; a reply from Luther Ganieany to Clay Britton providing information for purposes of legal advice; a reply from Clay Britton to Luther Ganieany, and a further reply from Luther Ganieany to Clay Britton providing information for purposes of legal advice [ATTORNEY-CLIENT PRIVILEGE]

September 24, 2020 email from Clay Britton to Luther Ganieany replying the last September 15 email from Ganieany for purposes of legal advice [ATTORNEY-CLIENT PRIVILEGE]

October 27, 2020 email from KHP General Counsel Luther Ganieany to Col. Jones, Lt. Col. DeVore, Will Lawrence, Clay Britton, Kraig Knowlton, John Yeary, and KHP HR Director Shellbie Blodgett regarding Harrington's EEOC Complaint, which included a claim regarding the payout of sick leave, for purposes of legal advice and in anticipation of litigation; A reply-all from Will Lawrence providing information for purposes of legal advice; a reply-all from Luther Ganieany providing

information for purposes of legal advice [ATTORNEY-CLIENT PRIVILEGE and WORK PRODUCT]

**State of Kansas Interrogatory No. 7**: Describe in detail each and every communication, written or verbal, that Governor Laura Kelly, or any member of her staff or administration participated in, or witnessed, regarding either of the Plaintiffs' terminations; specifying the dates of the communication, the method of communication, and identify all participants.

**State of Kansas ANSWER**: Objection. This interrogatory, seek the "detail" of "each and every" communication" regardless of method seeks a narrative response and is overbroad. *Hilt v. SFC Inc.*, 170 F.R.D. 182, 188 (D. Kan. 1997). The interrogatory further seeks to invade attorney-client privilege.

Defendants' overbreadth objection is **overruled.** The interrogatory is limited to communications with specific persons regarding a particular request from Plaintiffs. Further, the use of the word "detail" is not ambiguous as discussed more fully above. However, the Court finds the attorney-client privilege applicable. Plaintiffs withheld several communications to and from KHP General Counsel. They assert that they were emails regarding legal advice pertaining to sick leave. The response indicates that there were communications containing legal advice or seeking legal advice. Therefore, Defendants have demonstrated sufficient facts establishing the applicability of the attorney-client privilege. The Court understands that the State of Kansas Interrogatory response is, by itself, insufficient. However, given the interrogatory is nearly identical, the Court will read the two interrogatory responses together. The objection is **sustained.**

Accordingly, Defendants'—Jones, DeVore, and State of Kansas—responses to

interrogatory No. 7 are sufficient.

Interrogatory No. 8 provides:

**Jones/DeVore Interrogatory No. 8**: Describe in detail each and every
communication, written or verbal, that you participated in, or witnessed,
with Governor Laura Kelly, or any member of her staff or administration,
regarding any reports of discrimination or sexual harassment within the
Kansas Highway Patrol; specifying the dates of the communication, the
method of communication, and identify all participants.

**Jones/DeVore ANSWER**: Objection. This interrogatory, seeks the "detail"
of "each and every" communication" regardless of method seeks a narrative
response and is overbroad. *Hilt v. SFC Inc.*, 170 F.R.D. 182, 188 (D. Kan.
1997). This interrogatory is ambiguous and calls for a legal conclusion.
Assuming the phrase "reports of discrimination or sexual harassment"
refers to reports unlawful conduct, I am not aware of any such report. This
interrogatory further seeks information not subject to discovery under the
attorney-client privilege.

On July 16, 2020, an in-person meeting occurred. The attendees were Col.
Jones, Lt. Col. DeVore, Chief of Staff for the Office of the Governor Will
Lawrence, Chief Counsel for the Office of the Governor Clay Britton,
Director of Communications for the Office of the Governor Sam Coleman,
Dept. of Administration Chief Counsel John Yeary, Dept. of
Administration Director of Office of Personnel Services Kraig Knowlton,
and KHP General Counsel Luther Ganieany. The subject of the attorney-
client privileged meeting was to discuss performance concerns regarding
then-Major Harrington and then Major Kellerman. The details of the
communications are privileged.

**State of Kansas Interrogatory No. 8**: Describe in detail each and every
communication, written or verbal, that Governor Laura Kelly, or any
member of her staff or administration participated in, or witness, regarding
any Plaintiff Harrington's request to have his sick leave paid, post-
termination; specifying the days of the communication, the method of
communication, and identify all participants.

19

**State of Kansas ANSWER**: Objection. This interrogatory, seek the "detail" of "each and every" communication" regardless of method seeks a narrative response and is overbroad. *Hilt v. SFC Inc.*, 170 F.R.D. 182, 188 (D. Kan. 1997). The interrogatory further seeks to invade attorney-client privilege.

See the response to Interrogatory No. 2 by Col. Jones and Lt. Col. DeVore.[3]

---

[3]**Jones Answer to Interrogatory No. 2**: As superintendent, I am the ultimate decision maker regarding terminations. The superintendent is the appointing authority for all positions with the Kansas Highway Patrol other than the position of superintendent. The superintendent is empowered to remove persons from the unclassified positions of assistant superintendent and major and dismiss permanent and probationary employees in the classified service. K.S.A. 74-2113, K.S.A. 75-2946, K.S.A. 75-2949, and K.A.R. 1-7-4(h).

Myself, Lt. Col. DeVore, KHP General Counsel Luther Ganieany, Dept. of Administration Chief Counsel John Yeary, Dept. of Administration Director of Office of Personnel Services Kraig Knowlton, Chief of Staff for the Office of the Governor Will Lawrence, Chief Counsel for the Office of the Governor Clay Britton, Director of Communications for the Office of the Governor Sam Coleman.

Kellerman was provided ample opportunity in this administration to perform the duties of the role of Major. It became increasingly apparent that there was a lack of communication and a lack of competency, as well as an unfortunate attitude of resentment and/or insubordination. The apparent unwillingness to make difficult or unpopular command-level decisions, maintain operational awareness over his areas of operation, and impartially assess agency incidents involving pursuits, uses of force, and patrol vehicle damage etc., created an unacceptable risk of liability to the agency. It became increasingly clear that this employee was not a good fit for the managerial effectiveness of the KHP Executive Staff as a commander. Kellerman was presented with an opportunity to resign in lieu of termination. Kellerman said he was not resigning so he was terminated. Kellerman was demoted from the rank of major to the rank of captain in probationary status. As a probationary employee, I had the authority to dismiss Cpt. Kellerman at any time within six months in accordance with K.A.R. 1-7-4 (h). See also BATES Nos. KS_000054 to KS_000071 and KS_000075 to KS_000078, the memoranda written by myself and Lt. Col. DeVore regarding Kellerman's EEOC complaint.

**DeVore Answer to Interrogatory No. 2**: Col. Herman Jones is the ultimate authority in charge of terminations.

Col. Jones, KHP General Counsel Luther Ganieany , Dept. of Administration Chief Counsel John Yeary, Dept. of Administration Director of Office of Personnel Services Kraig Knowlton, Chief of Staff for the Office of the Governor Will Lawrence, Chief Counsel for the Office of the

The Court notes that Defendants indicated in their responses that the State response to Interrogatory No. 8 should have referred to Jones and DeVore Interrogatory No. 9, rather than 2. (Doc. 37, at 10). The interrogatory requests communications with the Governor or her staff regarding reports of discrimination or sexual harassment within the KHP. The information sought is specific and relevant to Plaintiffs' claims. As such, Defendants' overbreadth objection is **overruled.** Moreover, Defendants' objection that the interrogatory calls for a legal conclusion is without merit and, thus, **overruled.** *Ezfauxdecor, LLC v. Smith*, No. 15-9140-CM-KGG, 2017 WL 2721489, at *6 (D. Kan. June 23, 2017). However, Defendants object on the basis that an in-person meeting occurred with Chief Counsel present. The mere fact that a conversation took place with legal counsel present is insufficient to establish the applicability of the attorney-client privilege. Moreover, the fact that the subject matter of the conversation was Plaintiffs'

---

Governor Clay Britton, Director of Communications for the Office of the Governor Sam Coleman.

Kellerman was provided ample opportunity in this administration to perform the duties of the role of Major. It became increasingly apparent that there was a lack of communication and a lack of competency, as well as an unfortunate attitude of resentment and/or insubordination. The apparent unwillingness to make difficult or unpopular command-level decisions, maintain operational awareness over his areas of operation, and impartially assess agency incidents involving pursuits, uses of force, and patrol vehicle damage etc., created an unacceptable risk of liability to the agency. It became increasingly clear that this employee was not a good fit for the managerial effectiveness of the KHP Executive Staff as a commander. Kellerman was presented with an opportunity to resign in lieu of termination. Kellerman said he was not resigning so he was terminated. See also, BATES Nos. KS_000054 to KS_000071 and KS_000075 to KS_000078, the memoranda written by myself and Lt. Col. Jones regarding Kellerman's EEOC complaint.

job performance is similarly insufficient. Accordingly, the privilege objection is

**overruled.** Defendants—Jones, DeVore, and State of Kansas—are ordered to respond to

Interrogatory No. 8.

Interrogatory No. 9 provides:

**Jones/DeVore Interrogatory No. 9**: Describe in detail each and every communication, written or verbal, that you participated in, or witnessed, with any Kansas Highway Patrol employee regarding the subject of either of the Plaintiffs' terminations

**Jones/DeVore ANSWER**: Objection. This interrogatory, seeks the "detail" of "each and every" communication" regardless of method seeks a narrative response and is overbroad. *Hilt v. SFC Inc.*, 170 F.R.D. 182, 188 (D. Kan. 1997). This interrogatory further seeks information not subject to discovery under the attorney-client privilege.

Before the dismissal of Kellerman and Harrington's resignation, Colonel Jones, Luther Ganieany and I would likely have had various discussion on the topic.

The July 16, 2020 meeting referenced above occurred, the content of the that meeting is privileged.

I believe there was some coordination with Dept. of Administration by Luther Ganieany and/or Col. Jones regarding having a Dept. of Administration representative in the meetings with Kellerman and Harrington necessary documentation for the meetings.

I had a discussion with the other Majors that morning prior to the meetings to ensure proper coordination of equipment turn-in and facilitating transportation.

The morning of July 23, 2020, I met the Craig Kibbe, from the Dept. of Administration, Division of Personnel Services) at the KHP General Headquarters entrance and escorted him to Col. Jones' office. Col. Jones, Luther Ganieany, Craig Kibbe and I met briefly to discuss the process and then met with Harrington and Kellerman.

**State of Kansas Interrogatory No. 9**: Describe in detail each and every communication, written or verbal, that Governor Laura Kelly, or any member of her staff or administration participated in, or witnessed, regarding any reports of discrimination or sexual harassment within the Kansas Highway Patrol; specifying the dates of the communication, the method of communication, and identify all participants.

**State of Kansas ANSWER**: Objection. This interrogatory, seek the "detail" of "each and every" communication" regardless of method seeks a narrative response and is overbroad. *Hilt v. SFC Inc.*, 170 F.R.D. 182, 188 (D. Kan. 1997). The interrogatory further seeks to invade attorney-client privilege. This interrogatory is ambiguous and calls for a legal conclusion. Assuming the phrase "employment discrimination or sexual harassment activities" refers to unlawful conduct, there are none.

The interrogatory requests information that is specific and relevant to Plaintiffs' claims. As such, the overbreadth objection is **overruled.** Moreover, communications referenced in the answer with General Counsel do not show they are protected by the attorney-client privilege. The objection is conclusory and does not give facts to determine its applicability as required by Fed. R. Civ. P. 26. Therefore, the objection is **overruled** on that basis. Defendants—Jones, DeVore, and State of Kansas—are ordered to respond to interrogatory No. 9.

Plaintiffs question the appropriateness of Col. Jones, Lt. Col. DeVore, or Mr. Ganieany answering State Interrogatories Nos. 7-9. They question whether those individuals possess the necessary information. However, the individuals do not have to rely on their own personal knowledge, but the State "must furnish information available to the party." Fed. R. Civ. P. 33(b)(1)(B). While an entity has discretion in selecting the

officer or agent when answering the interrogatory, whoever answers the interrogatory must include whatever information is available to the party. *Law v. Nat'l Collegiate Athletic Ass'n*, 167 F.R.D. 464, 476 (D. Kan. 1996), *vacated on other grounds*, *Univ. of Texas at Austin v. Vratil*, 96 F.3d 1337 (10th Cir. 1996). In other words, they have a duty to consult with the State and acquire the information necessary to answer the interrogatory adequately. *Id.* Accordingly, absent a showing that the individuals failed in that duty, the Court is not inclined to compel further responses to the interrogatories on that basis.

Interrogatory No. 11 provides:

**<u>Jones/DeVore Interrogatory No. 11</u>**: Describe in detail each and every communication, written or verbal, that you participated in, or witnessed, with any member or staff of the Kansas Legislature regarding the subject of either of the Plaintiffs' terminations.

**<u>Jones/DeVore ANSWER</u>**: Objection. This interrogatory, seeks the "detail" of "each and every" communication regardless of method seeks a narrative response and is overbroad. *Hilt v. SFC Inc.*, 170 F.R.D. 182, 188 (D. Kan. 1997). This interrogatory further seeks information not subject to discovery under the attorney-client privilege.

To the best of my recollection, the following communications occurred, they are subject to attorney-client privilege and the work product doctrine. See K.S.A. 46-1106 (duty of confidence extends to post auditors).

9/24/20 email from Heidi Zimmerman the Kansas Legislative Division of Post Audit to KHP General Counsel Luther Ganieany pertaining to policies and procedures for dismissals.

9/24/20 email from Mr. Ganieany to Col. Jones and Lt. Col. DeVore pertaining to policies and procedures for dismissals.

24

9/24/20 email from Col. Jones to Mr. Ganieany and Lt. Col. DeVore
pertaining to policies and procedures for dismissals.

10/07/20 email from Ms. Zimmerman to Mr. Ganieany pertaining to
personnel records. Reply from Mr. Ganieany to Ms. Zimmerman regarding
the same and EEOC complaints, same email forwarded to Col. Jones and
Lt. Col. DeVore.

10/22/20 email from Ms. Zimmerman to Mr. Ganieany with inquiry
pertaining to dismissal process. 10/23/20 reply by Mr. Ganieany, with the
same email forwarded to Col. Jones, Lt. DeVore, Dept. of Administration
Chief Counsel John Yeary and Dept. of Administration Director of Office
of Personnel Services Kraig Knowlton. A reply the same date from Col.
Jones.

11/02/20 email from Ms. Zimmerman to Col. Jones and Mr. Ganieany
regarding draft report. Forwarded by Mr. Ganieany to Lt. Col. DeVore on
the same date.

Because the interrogatory does not limit the word "detail" by definition, the Court finds

that the interrogatory does not request the documents with reasonable particularity and

elicits the concerns raised by Judge Rushfelt's opinion which was discussed more

thoroughly above. *See Hilt*, 170 F.R.D. at 186–87. The scope is not sufficiently limited

and the Defendants' overbreadth objection is, thus, **sustained.** However, Defendants did

not meet their burden to show the existence of the attorney-client privilege. Audit work is

mandated by Kansas statute pursuant to K.S.A § 46-1106(a). The post auditor reports his

or her findings to the "post audit committee, governor, and attorney general." *Id.* § 46-

1106(b). The post auditor or firm conducting audit work are subject to the "same duty of

confidentiality imposed by law on any such person or state agency." However,

confidentiality does not necessarily mean the documents or communications are

privileged. *Kendall State Bank v. West Point Underwriters, LLC*, No. 10-2319-JTM-KGG, 2013 WL 593957, at *2 (D. Kan. Feb. 15, 2013) ('[I]t is well-established in this District that "privileged" and "confidential" are two distinct concepts.")

Moreover, the auditors for the Legislative Post Audit are not the client nor do they share a common interest with client. For instance, it is well-established that attorney-client privilege does not extend to communications between a company and its auditors. *See United States v. Arthur Young & Co.*, 465 U.S. 805, 818–20 (1984); *see also In re Honeywell Intern., Inc. Sec. Litig.*, 230 F.R.D. 293, 298 (S.D.N.Y. 2003). The Legislative Post Auditors serve a public responsibility that transcends any employment or attorney-client relationship. *See Arthur Young*, 465 U.S. at 817. Defendants have not shown why divulging the contents of legal advice with the auditors should be protected by the attorney-client privilege. As such, Defendants' objection that the information is protected by the attorney-client privilege is **overruled.** However, as discussed, the overbreadth objection is **sustained.** Defendants', Jones and DeVore, responses are sufficient.

Interrogatory No. 12 provides:

**Jones/DeVore Interrogatory No. 12**: Describe in detail each and every communication, written or verbal, that you participated in, or witnessed, regarding any investigations of the reports of discrimination or sexual harassment within the Kansas Highway Patrol.

**Jones/DeVore ANSWER**: See the objections and response to Interrogatory No. 8, which are incorporated here.[4]

---

[4]*See* additional discussion *supra* Jones and DeVore Answer to Interrogatory No. 8.

Plaintiffs object to interrogatory No. 12 on the same basis they objected to interrogatory No. 8. Accordingly, the Court **overrules** the overbreadth objection. Defendants incorporate their responses to Interrogatory No. 8 in which the Court overruled the privilege objection. Accordingly, the Court **overrules** the objection on the basis of the attorney-client privilege. Defendants, Jones and DeVore, must respond to Interrogatory No. 12.

> **Jones/DeVore Interrogatory No. 13**: Identify in detail all information you received regarding the status or outcome of any investigations of the allegations of discrimination or sexual harassment within the Kansas Highway Patrol, specifying the dates you received the information and identifying all documents related to your answer.
>
> **Jones/DeVore ANSWER**: See the objections and response to Interrogatory No. 8, which are incorporated here.[5]

Plaintiffs object to interrogatory No. 13 on the same basis they objected to interrogatory No. 8. Accordingly, the Court **overrules** the overbreadth objection. The Court **overrules** the objection on the basis of the attorney-client privilege for the reasons stated above. Defendants, Jones and DeVore, are ordered to respond to Interrogatory No. 13

### b.  State of Kansas Interrogatory Nos. 10 and 13

Plaintiffs move to compel responses to two additional Interrogatories from the State of Kansas. State Interrogatory No. 10 provides:

---

[5]*See* additional discussion *supra* Jones and DeVore Answer to Interrogatory No. 8.

**<u>State of Kansas Interrogatory No. 10</u>**: Provide the following details regarding the "Independent Investigation" conducted by Fisher, Patterson, Sayler & Smith:

> a. Identify the person or agency who hired Fisher, Patterson, Sayler & Smith to perform the investigation;
>
> b. If applicable, identify the designated client for the investigation;
>
> c. Identify all persons who were interviewed and identify who conducted the interviews;
>
> d. Identify every agency, individual person, and/or agency head who reviewed any reports or was provided any information regarding the investigation, include dates such review occurred, or was made available, and describe what information was provided.

**<u>State of Kansas ANSWER</u>**: Objection, this interrogatory is beyond the scope of discovery. It is not relevant to any party's claim or defense nor is it proportional to the needs of the case. Col. Jones is the appointing authority with the sole authority to dismiss persons from the classified service with the Kansas Highway Patrol and the sole authority to remove persons from the unclassified service—other than the position of superintendent—with the Kansas Highway Patrol. K.S.A. 74-2113, K.S.A. 75-2946, K.S.A. 75-2949, and K.A.R. 1-7-4(h). Neither Col. Jones nor any other KHP personnel reviewed the investigation report, nor were Col. Jones or any other KHP personnel involved in the investigation process (except as witnesses interviewed) or a part of any review of the results of the investigation.

Plaintiffs object to the Interrogatory as irrelevant and not proportional to the needs of the case. Specifically, they claim Col. Jones had the sole authority to dismiss persons from classified and unclassified service with the KHP and was not involved in the investigation process. (Doc. 37, at 10–11).

Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the

case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). *See also Smith v. MCI Telecomm. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991). The claims asserted by Plaintiffs in their complaint include workplace retaliation in violation of Title VII. (Doc. 1). And part of proving retaliation involves knowing an employer's knowledge and state of mind when taking action against an employee. *Peterson v. Utah Dep't of Corrections*, 301 F. 3d 1182, 1188–89 (10th Cir. 2002). And while it may be true that Col. Jones had sole authority to dismiss certain individuals within the KHP, there may be a variety of factors that lead to that decision. For instance, Col. Jones in his answers to the interrogatories indicate that several other individuals were consulted when making the decision to terminate Plaintiffs. (Doc. 34-2, at 1–2). Interrogatory No. 10 seeks information pertaining to who was interviewed and who reviewed the investigation report. Individuals reviewing contents of the report could bear on the issues in the case even though Col. Jones was not personally involved in the investigation process. As such, the objection as to relevance is **overruled.** Further, Plaintiffs did not put forth any evidence that the information is not proportional to the needs of the case. That objection is likewise **overruled.** Accordingly, the State of Kansas is ordered to respond to Interrogatory No. 10.

Interrogatory No. 13 provides:

**State of Kansas Interrogatory No. 13**: Identify in detail all information relayed or communicated, in the past five years, from any employee of the Department of Administration to any Kansas Highway Patrol employee regarding the status or outcome of any investigations of the allegations of

discrimination, retaliation, or sexual harassment within the Kansas Highway Patrol, specifying the dates the information was relayed or communicated, how it was communicated, and to whom.

**State of Kansas ANSWER**: Objection, this interrogatory is overbroad and beyond the scope of discovery as disproportional to the needs of the case. Plaintiffs claim (1) they engaged in conduct protected under Title VII and were subjected to unlawful retaliation for that alleged protected conduct and (2) they engaged in speech protected by the First Amendment and were subjected to retaliation by Col. Jones and/or Lt. Col. DeVore. The interrogatory is further overbroad in seeking the "detail [of] all information … regarding the status or outcome" of any investigations of" unspecified investigations of unspecified allegations. Further, this interrogatory seeks information protected from discovery by the attorney-client privilege and/or the work product doctrine.

Defendants object that the information sought is overbroad and not proportional to the needs of the case. They further object on the basis that the information sought is protected by attorney-client privilege and the work product doctrine. (Doc. 37, at 11). First, they do not explain how the interrogatory is disproportionate to the needs of the case. So, the proportionality objection is **overruled.** In regard to the overbreadth objection, Defendants find the words "all information" and "any employee" overbroad. In other words, they think the Interrogatory requests information beyond the scope of discovery. The Court does not agree. Interrogatory No. 13 seeks information related to the status or outcome of sexual harassment investigations within the KHP. And the complaint alleges that Plaintiffs were terminated after opposing such actions. The information sought is both relevant and sufficiently tailored. The overbreadth objection is **overruled.** Lastly, Defendants object that the information is covered by the attorney-client privilege and

work product doctrine. Defendants do not make a showing of how they are applicable and have not met their burden. Therefore, the attorney-client privilege/work product doctrine objections are **overruled.** The State of Kansas must answer Interrogatory No. 13.

### c. Jones and DeVore RFP Nos. 1 and 2

Plaintiffs move to compel various RFPs that Defendants objected to on various grounds. The Court will consider each one in turn but will consider RFPs that have similar objections or content together. RFP No. 1 provides:

> **Jones and DeVore RFP No. 1**: All documents relating to Plaintiffs' reports of allegations of discrimination, sexual harassment, and/or employment retaliation.

> **Jones/DeVore RESPONSE**: Objection. This request fails to describe the documents sought with reasonable particularity as required by F.R.Civ.P. 34(b)(1)(A). Further, this request for "documents that relate to" "employment benefits, employment perks, incentives, or retirement" is overbroad. *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 576 (D.Kan. 2009) (quoting *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 658 (D.Kan. 2006)) (discovery requests seeking "all documents" "relating to" a broad subject are facially overbroad). Defendant objects to this request in its entirety.

The parties appeared to have resolved this matter through the briefing process. (Doc. 38, at 10) ("The Defendants' Response sets forth that they are not withholding any documents on the basis of their objections. Plaintiffs are willing to accept that response as complete."). Accordingly, the Court finds **moot** the dispute concerning RFP No. 1. Defendants, Jones and DeVore, do not need to take additional action.

RFP No. 2 provides:

**Jones and DeVore RFP No. 2**: All documents relating to any investigations of Plaintiffs' reports of allegations of discrimination, sexual harassment, and/or employment retaliation.

**Jones/DeVore RESPONSE**: This request is duplicative of Request No. 1, see the objections and response to Request No. 7, supra, which is incorporated herein.

**Jones/DeVore SUPPLEMENTAL RESPONSE**: The reference should be to the objections and response to Request No. 1 and not No. 7.[6]

There appears to be confusion regarding Defendants' response to RFP No. 2. Defendants' answer was that the request was duplicative of RFP No. 1 and incorporated the response and objections from RFP No. 1. They further mention in their response brief that it may be more accurate and appropriate to state that they are not withholding any documents on the basis of that objection. (Doc. 37, at 14). Plaintiffs do not accept that response because they contend that RFP No. 2 is not duplicative of RFP No. 1 and there is ambiguity on whether Defendants would still maintain their position in light of that. The Court understands why there is confusion and ambiguity. To resolve the issue, the Court will

---

[6]**Jones/DeVore Response to RFP No. 1**: Objection. This request fails to describe the documents sought with reasonable particularity as required by F.R.Civ.P. 34(b)(1)(A). Further, this request for "documents that relate to" "employment benefits, employment perks, incentives, or retirement" is overbroad. *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 576 (D.Kan. 2009) (quoting *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 658 (D.Kan. 2006)) (discovery requests seeking "all documents" "relating to" a broad subject are facially overbroad). Defendant objects to this request in its entirety.

**overrule** the overbreadth objection and Defendants, Jones and DeVore, are ordered to produce documents to the extent that there are documents withheld on that basis.

### d.  Jones and DeVore RFP No. 4 and State of Kansas RFP No. 11

The Jones and DeVore RFP No. 4 and State of Kansas No. 11 contain identical language and will be considered together. The RFPs provide:

> <u>**Jones and DeVore RFP No. 4/State of Kansas RFP No. 11**</u>: All documents which evidence, refer, or relate to the termination of Plaintiffs' employment.

> <u>**Jones/DeVore/State of Kansas RESPONSE**</u>: Objection, this request is facially overbroad and fails to describe the documents sought with reasonable particularity as required by F.R.Civ.P. 34(b)(1)(A). Defendant objects to this request in its entirety.

Defendants object on the basis that the RFP is overbroad and does not describe the documents with particularity as require by the Federal Rules of Civil Procedure. Rule 34(b)(1)(A) provides that an RFP "must describe with reasonable particularity each item or category of items to be inspected." In particular, they contend that terms such as "relating to" or "concerning" are facially overbroad. (Doc. 37, at 16). And they further contend that the District of Kansas case, *In re Urethane Antitrust Litigation*, supports that proposition. The Court disagrees. The court in *In re Urethane Antitrust Litigation* was framing the defendants' argument when stating that words such as "relating to" were facially overbroad. 261 F.R.D. 570, 576 (D. Kan. 2009). In fact, the court actually overruled the overbreadth objections in dispute. *Id.* ("The court overrules defendants'

overbreadth objections"). The court found that "omnibus phrases" can be used in connection with sufficiently specific terms. *Id.* And here, words such as "relate" and "refer" are used in connection to a sufficiently specific category—termination of Plaintiffs' employment. Plaintiffs' termination is relevant to their claims and the language of the RFP sufficiently describes the category to be inspected. Accordingly, Defendants' overbreadth objection is **overruled** as to both Jones and DeVore RFP No. 4 and State of Kansas RFP No. 11. Defendants must produce documents responsive to the RFP.

### e.   Jones and DeVore RFP No. 9 and State of Kansas RFP No. 15

The Jones and DeVore RFP No. 9 and State of Kansas No. 15 contain identical language and will be considered together. The RFPs provide:

> **Jones and DeVore RFP No. 9/State of Kansas RFP No. 15**: All documents that evidence or relate to any meetings, communications, or directives with or to the Plaintiffs regarding the Defendants' defenses, including the subject matters in the documents provided in Defendants' Rule 26 initial disclosure documents.

> **Jones/DeVore/State of Kansas RESPONSE**: Objection, this request is facially overbroad and fails to describe the documents sought with reasonable particularity as required by F.R.Civ.P. 34(b)(1)(A). Defendant objects to this request in its entirety.

Defendants assert that the RFPs are facially overbroad and do not describe the documents to be produced with reasonable particularity. (Doc. 37, at 16–17). They suggest that the RFPs requests every document that may be relevant in the case. (*Id.*, at 17). Here, the scope of the interrogatory is too broad. The interrogatory does not request the documents

with reasonable particularity and elicits the concerns raised by Judge Rushfelt which was discussed more thoroughly above. *See Hilt*, 170 F.R.D. at 186–87. The scope is not sufficiently limited and the Defendants' overbreadth objection is, thus, **sustained.** Defendants'—Jones, DeVore, and State of Kansas—responses to the RFPs are sufficient.

### f.   Jones and DeVore RFP No. 10 and State of Kansas RFP No. 16

The Jones and DeVore RFP No. 10 and State of Kansas No. 16 contain identical language and will be considered together. The RFPs provide:

> **Jones and DeVore RFP No. 10/State of Kansas RFP No. 16:** All documents that relate to interviews or statements obtained from witnesses in this matter.

> **Jones/DeVore/State of Kansas RESPONSE**: Objection, this request is facially overbroad and fails to describe the documents sought with reasonable particularity as required by F.R.Civ.P. 34(b)(1)(A). Defendant objects to this request in its entirety.

Defendants object that the RFPs are overbroad. (Doc. 37, at 16–17). They essentially make the same arguments they did for Jones and DeVore RFP No. 9 and State of Kansas RFP No. 15. Documents that relate to interviews or statements from witnesses is directly related to Plaintiffs' claims or Defendants' defenses. Defendants have not met their burden on showing why the information sought is overbroad. Accordingly, the overbreadth objection is **overruled.** Defendants—Jones, DeVore, State of Kansas—must produce documents responsive to the RFPs.

35

**g. Jones and DeVore RFP No. 15 and State of Kansas RFP No. 21 and Jones and DeVore RFP No. 16 and State of Kansas RFP No. 22**

The two sets of RFPs comprised of the same issues and will be considered together. The Jones and DeVore RFP No. 15 and State of Kansas No. 21 contain identical language and provide:

> <u>**Jones and DeVore RFP No. 15/State of Kansas RFP No. 21**</u>: Any and all documents relating to the investigation by the law firm of Fisher, Patterson, Sayler & Smith regarding the allegations and reports of gender discrimination or sexual harassment.

> <u>**Jones/DeVore RESPONSE**</u>: Defendants object to this request as facially overbroad and failing to describe the documents sought with reasonable particularity as required by F.R.Civ.P. 34(b)(1)(A); this request further seeks documents not subject to discovery under the attorney-client privilege and work product doctrine. Defendant objects to this request in its entirety.

> <u>**Jones/DeVore SUPPLEMENTAL RESPONSE**</u>: This defendant does not have responsive documents. See the Response by the State of Kansas to Request Nos. 21 and 22.[7]

> <u>**State of Kansas RESPONSE**</u>: Defendants object to this request as facially overbroad and failing to describe the documents sought with reasonable particularity as required by F.R.Civ.P. 34(b)(1)(A); this request further seeks documents not subject to discovery under the attorney-client privilege and work product doctrine. Defendant objects to this request in its entirety.

Similarly, the Jones and DeVore RFP No. 16 and State of Kansas No. 22 contain identical language and provide:

> <u>**Jones and DeVore RFP No. 16/State of Kansas RFP No. 22:**</u> The investigation report by the law firm of Fisher, Patterson, Sayler & Smith regarding the allegations and reports of gender discrimination or sexual harassment.

---

[7]*See* additional discussion *infra* State of Kansas response to RFPs Nos. 21 and 22.

**Jones/DeVore RESPONSE**: The July 2, 2020 investigation report by Fisher, Patterson, Sayler & Smith does not "regard" reports of gender discrimination. Defendant objects to the request for the July 2, 2020 investigation report to General Counsel for the Office of the Governor Clay Britton. The report is not subject to discovery under the attorney-client privilege and work product doctrine.

**Jones/DeVore SUPPLEMENTAL RESPONSE**: This defendant does not have responsive documents. See the Response by the State of Kansas to Request Nos. 21[8] and 22.

**State of Kansas RESPONSE**: The July 2, 2020 investigation report by Fisher, Patterson, Sayler & Smith does not "regard" reports of gender discrimination. Defendant objects to the request for the July 2, 2020 investigation report to General Counsel for the Office of the Governor Clay Britton. The report is not subject to discovery under the attorney-client privilege and work product doctrine.

Defendants assert, *inter alia*, that the document sought by Plaintiffs are protected by the work product doctrine.

Here, Defendants allege that the independent investigation conducted by the law firm was done so in anticipation of litigation. (Doc. 37, at 19). Plaintiffs, on the other hand, contend that the investigation and report was not prepared in anticipation of litigation and Governor Kelly was required to do so by Executive Order 18-04. (Doc. 34, at 24). The relevant provisions of Executive Order 18-04 provide:

5. Matters involving any elected official, department or agency head, or any appointee of the Governor may be investigated by independent legal counsel.

. . .

---

[8]*See* additional discussion *supra* State of Kansas response to RFP Nos. 21.

7. Allegations of sexual harassment, discrimination, or retaliation within the Office of the Governor will be investigated promptly, and violations of law or policy shall constitute grounds for disciplinary action, including dismissal.

Kan. Exec. Order No. 18-04 (Feb. 5, 2018). Paragraph five of the order uses permissive language such as "may be investigated by independent legal counsel." While paragraph seven of the executive order uses mandatory language such as "will be investigated promptly."

The investigation report created by Fisher, Patterson, Sayler & Smith was conducted to investigate allegations and reports of gender discrimination and sexual harassment within the KHP. (Doc. 37-2). The investigation occurred during June 2020 and the report was issued July 2, 2020. Three weeks later on July 23, 2020 Plaintiffs' employment was terminated and they filed their Equal Employment Opportunity Commission ("EEOC") complaints on August 17, 2020. (Doc. 38, at 18).

The executive order states that allegations of sexual harassment or discrimination will be investigated promptly. Therefore, the investigation conducted by Fisher, Patterson, Sayler & Smith was one that was made mandatory by executive order. Granted, there are elements of paragraph five present such as the matter involving an independent investigation. However, regardless of who conducted the investigation or who the subject of the investigation was, the executive order mandated that an investigation takes place. The mandatory nature of paragraph seven indicates that the investigation and report was prepared for a regular business purpose. *See Raytheon*

*Aircraft Co.*, 183 F. Supp. 2d at 1288. Documents that were created during investigations mandated by policy are typically not protected by the work-product doctrine. *See id.* Accordingly, the work-product doctrine objection is **overruled.**

Defendants' next objection is that the documents are covered by the attorney-client privilege. (Doc. 37, at 19). In support of their objection, they state that the author and recipient of each document is an attorney and pertains to the investigation. (Doc. 37, at 21). Plaintiffs respond that they are entitled to the underlying facts of the documents and do not seek mental impressions, conclusions, opinions, or legal theories. (Doc. 38, at 21). Indeed, the protection of the attorney-client privilege extends only to communications and not to facts. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). Defendants' privilege log states that the communications regarding the report are from an attorney regarding the subject matter of the representation. (Doc. 34-10). Communications of this nature are typically privileged to the extent that communication contains legal advice.

However, Plaintiffs allege the privilege has been waived because Governor Kelly has publicly referenced the existence of the documents, revealed the content of the documents, and released a summary of the investigation. It is well-settled that the privilege is waived if the client discloses the substances of an otherwise privileged communication. *Martley v. City of Basehor*, No. 19-2138-DDC-GEB, 2021 WL 1210013, at *17 (D. Kan. Mar. 31, 2021). And any voluntary disclosure to a third party waives the

privilege. *Id.* The Court has reviewed the materials Plaintiff attached to the motion as Exhibit 5. The Court finds that waiver applies. The Governor released summaries and details of the report, as well as its findings. The report to which Governor Kelly relied upon in making those statements is no longer privileged. The Court has identified privilege log entries 4, 6-9, and 11-18 to be pertinent to the independent investigation. However, any underlying documents not included in the report are still covered under the attorney-client privilege. Accordingly, the attorney-client privilege objection is **overruled** as it pertains to State of Kansas RFP No. 22. However, the attorney-client privilege objection is **sustained** as it pertains to State of Kansas RFP No. 21 to the extent that those RFPs request documents underlying the report. Lastly, the Court does not find the RFPs to be overbroad. The documents sought are pertinent to the claims against the Defendant and seek documents within the scope of what they are alleging. Accordingly, the overbreadth objection is **overruled.** Defendant, State of Kansas, must respond to State of Kansas RFP No. 22 to the extent that the communications and documents were relied upon when Governor Kelly made public statements. State of Kansas does not need to produce documents responsive to State of Kansas RFP No. 21 so long as Governor Kelly did not rely on any of those documents when making public statements. Responses by Jones and DeVore are satisfactory.

### h.  Jones RFP Nos. 18 and 19 and State of Kansas RFP Nos. 24 and 25

The Jones RFP Nos. 18 and 19 and State of Kansas Nos. 24 and 25 pertain to "sick leave paid out" and will be considered together. The RFPs provide:

**Jones RFP No. 18**: Any and all documents or communications relating to Plaintiff Harrington's request to have his sick leave paid out

**Jones RFP No. 19**: Any and all documents or communications relating to Plaintiff Harrington's allegations of retaliation regarding his request to have his sick leave paid out.

> **Jones RESPONSE to Nos. 18 and 19**: Defendant objects to this request to the extent it seeks documents not subject to discovery under the attorney-client privilege and work product doctrine. See answer to Interrogatory No. 7 to Col. Jones[9], which provides the information that would otherwise be included on a privilege log.

**State of Kansas RFP No. 24**: Any and all documents or communications relating to Plaintiff Harrington's request to have his sick leave paid out

> **State of Kansas RESPONSE**: See BATES Nos. KS_001087 to KS_001092
>
> Defendant objects to this request to the extent it seeks documents not subject to discovery under the attorney-client privilege and work product doctrine. See Answer to Interrogatory No. 7 to DeVore and Jones[10] for privilege log.

**State of Kansas RFP No. 25**: Any and all documents or communications relating to Plaintiff Harrington's allegations of retaliation regarding his request to have his sick leave paid out

> **State of Kansas RESPONSE**: Defendant objects to this request to the extent it seeks documents not subject to discovery under the attorney-client privilege and work

---

[9]*See* additional discussion *supra* Answer to Jones Interrogatory No. 7.

[10]*See* additional discussion *supra* Answer to Jones and DeVore Interrogatory No. 7.

product doctrine. See Answer to Interrogatory No. 7 to
DeVore and Jones for privilege log.

Defendants' response to Jones RFP Nos. 18 and 19 and State of Kansas RFPs Nos. 24

and 25 objects on the basis that the information sought is overbroad, protected by the

work product doctrine, and the attorney-client privilege. (Doc. 37, at 21). The Court finds

that none of the RFPs are overbroad. The RFPs are sufficiently targeted toward relevant

documents. The overbreadth objections are thus **overruled.**

The Court is unable to assess which documents are both protected or privileged

pursuant to the work product doctrine or attorney-client privilege, and are responsive to

the RFPs. Looking at Defendants' privilege log, many of the documents have been

deemed waived in connection to the independent investigation. However, log entries 1, 2,

3, 5 and 10 in the privilege log sufficiently demonstrate that the privilege applies.

Therefore, to the extent that those log entries are responsive to the RFPs, they are

protected by the attorney-client privilege. However, any other responsive documents that

have not been identified on the privilege log must be produced. Accordingly, the

attorney-client privilege objection is **sustained** only to the extent that privilege log entries

1, 2, 3, and 10 are responsive to the RFP. Jones' response to RFP Nos. 18 and 19 and

State of Kansas' responses to RFP Nos. 24 and 25 are satisfactory to the extent it

complies with what is set forth above.

**i.   Jones RFP No. 35 and DeVore RFP No. 33 and State of Kansas RFP No. 51**

The Jones RFP No. 35, DeVore RFP No. 33, and State of Kansas RFP No. 51 contain identical language and will be considered together. The RFPs provide:

> **Jones RFP No. 35/DeVore RFP No. 33/State of Kansas RFP No. 51**: All documents utilized, referenced, referred to, or relied upon to formulate or support your responses to Plaintiffs' Interrogatories.
>
> **Jones/DeVore/State of Kansas RESPONSE**: Objection, this request is overbroad and fails to describe the documents sought with reasonable particularity as required by F.R.Civ.P. 34(b)(1)(A). Defendant objects to this request in its entirety.

Defendants object on the basis that the RFPs are overbroad. The Court finds that the RFPs are sufficiently narrow and specific. The overbreadth objection is **overruled.**

Defendants—Jones, DeVore, and State of Kansas—are ordered to produce documents responsive to the RFPs to the extent that they do not include documents already ruled as privileged.

## IV.   Conclusion

The Court has produced a chart to help the parties understand what is being ordered. The chart provides a concise record of how the Court ruled on the motion; however, the parties should refer to what is set forth more fully herein for a more comprehensive understanding.

| Jones/DeVore Interrogatories | |
|---|---|
| **Interrogatories** | **Result** |
| No. 6 | Overbreadth objection and attorney-client privilege objection overruled. Defendants must respond to the interrogatory. |
| No. 7 | Attorney-client privilege sustained. Defendants' responses are sufficient. |
| No. 8 | Overbreadth objection and attorney-client privilege objection overruled. Defendants must respond to the interrogatory. |
| No. 9 | Overbreadth objection and attorney-client privilege objection overruled. Defendants must respond to the interrogatory. |
| No. 11 | Overbreadth objection is sustained and attorney-client privilege objection overruled. Defendants' responses are satisfactory. |
| No. 12 | Overbreadth objection and attorney-client privilege objection overruled. Defendants must respond to the interrogatory. |
| No. 13 | Overbreadth objection and attorney-client privilege objection overruled. Defendants must respond to the interrogatory. |

| State of Kansas Interrogatories | |
|---|---|
| **Interrogatories** | **Result** |
| No. 7 | Attorney-client privilege sustained. Defendant's response is sufficient. |
| No. 8 | Overbreadth objection and attorney-client privilege objection overruled. Defendant must respond to the interrogatory. |
| No. 9 | Overbreadth objection and attorney-client privilege objection overruled. Defendant must respond to the interrogatory. |
| No. 10 | Relevancy objection and proportionality objection is overruled. Defendant must respond to the interrogatory. |
| No. 13 | Relevancy objection, proportionality objection, and attorney-client privilege/work-product objection is overruled. Defendant must respond to the interrogatory. |

| Jones/DeVore Requests for Production | |
|---|---|
| **Requests for Production** | **Result** |
| No. 1 | RFP is moot. No further action need be taken. |
| No. 2 | Overbreadth objection is overruled. Defendants must produce documents to the extent they withheld documents on the basis of that objection |
| No. 4 | Overbreadth objection is overruled. Defendants must produce documents responsive to RFP No. 4 |
| No. 9 | Overbreadth objection is sustained. Defendants' responses are sufficient. |
| No. 10 | Overbreadth objection is overruled. Defendants must produce documents responsive to RFP No. 10 |
| No. 15 | Defendants noted they do not possess responsive documents. Their supplemental response to RFP No. 15 is sufficient. |
| No. 16 | Defendants noted they do not possess responsive documents. Their response to RFP No. 16 is sufficient. |
| No. 18* | Attorney-client privilege objection is sustained to the extent privilege log entries 1, 2, 3, and 10 are responsive to RFP No. 18. |
| No. 19* | Attorney-client privilege objection is sustained to the extent privilege log entries 1, 2, 3, and 10 are responsive to RFP No. 19. |
| No. 33** | Overbreadth objection is overruled. Defendant must produce documents responsive to RFP No. 33. |
| No. 35* | Overbreadth objection is overruled. Defendant must produce documents responsive to RFP No. 35. |
| *Jones only<br>**DeVore only | |

| State of Kansas Requests for Production | |
|---|---|
| **Requests for Production** | **Result** |
| No. 11 | Overbreadth objection is overruled. Defendant must produce documents responsive to RFP No. 11 |
| No. 15 | Overbreadth objection is sustained. Defendant's response is sufficient. |
| No. 16 | Overbreadth objection is overruled. Defendant must produce documents responsive to RFP No. 16 |
| No. 21 | Attorney-client privilege objection is sustained. |

45

| | Defendant's response is sufficient. |
|---|---|
| No. 22 | Attorney-client privilege objection and work-product objection is overruled. Defendant must produce responsive documents to RFP No. 22. |
| No. 24 | Attorney-client privilege objection is sustained to the extent privilege log entries 1, 2, 3, and 10 are responsive to RFP No. 24. |
| No. 25 | Attorney-client privilege objection is sustained to the extent privilege log entries 1, 2, 3, and 10 are responsive to RFP No. 25. |
| No. 51 | Overbreadth objection is overruled. Defendant must produce documents responsive to RFP No. 51. |

**IT IS THEREFORE ORDERED** Plaintiff's Motion to Compel (Doc. 34) is **GRANTED IN PART and DENIED IN PART** as more fully set forth herein.

**IT IS FURTHER ORDERED** that Defendants supplement their privilege log to correlate with specific requests for production.

**IT IS FURTHER ORDERED** that the parties comply fully with this order within thirty (30) days.

**IT IS SO ORDERED.**

Dated November 24, 2021

/S KENNETH G. GALE
Kenneth G. Gale
U.S. Magistrate Judge